IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN PHILLIP WALKER, JR.,

                Plaintiff,

                                        No. 2:20-cv-00164-MV-KRS

v.

GENESIS EXTRACTIONS, LLC.,

                Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

*Pro se* Plaintiff John Walker seeks a temporary restraining order against Genesis Extractions, LLC to release all hemp products that belong to W3 Hemp Farms, a company that Walker owns. (Doc. 3). Pursuant to an amended order of reference from United States District Judge Martha Vazquez (Doc. 7), the Court has considered the motion and the available record. Having done so, the Court concludes *ex-parte* relief is unavailable and **RECOMMENDS** that Plaintiff's motion for a temporary restraining order be **DENIED**.

## BACKGROUND

Walker owns W3 Hemp Farms (referred to as "W3"), a Kentucky-based company that, as the name implies, farms hemp. (Doc. 1). At some point, W3 entered into a verbal contract with Plug Supply in Colorado to process W3's hemp crop. (*Id.*). Plug Supply was to act as the exclusive broker for W3 and sell the processed biomass. (*Id.*). The parties would then split the proceeds 60/40 in W3's favor. (*Id.*). Under the arrangement, W3 "was to be paid in temporal intervals (30 days partially then 60 days in full, pursuant to [Plug Supply's] prearranged contracts)." (*Id.*).

Plug Supply did not pay as promised. (*Id.*). When Walker inquired as to the status, Plug Supply promised the money was forthcoming. (*Id.*). Walker, however, began investigating and discovered that, contrary to W3's and Plug Supply's contract, Plug Supply not only had not "processed [the] crop at [Plug Supply's] facilities, they had used a broker, who[m] [Plug Supply] gave 2.5% of [W3's] product to, to secure another processor, Genesis Extractions to do the work that [the W3 and Plug Supply] had previously agreed that [Plug Supply] would [itself] exclusively perform." (*Id.*).

Fearing he had been misled, Walker travelled to Colorado to meet with Plug Supply. (*Id.*). There, Walker saw he had been "grossly misled about the nature and capabilities of [Plug Supply's] processing facilities, that Plug was unable to [itself] perform the service which [W3] had contracted with [Plug Supply] to exclusively perform." (*Id.*). After some prying, Brad Mynard, Plug Supply's CEO, admitted to the "unauthorized arrangement" with Genesis. (*Id.*). Walker then flew to New Mexico to meet with Louis, the owner of Genesis, who confirmed that a broker had been used. (*Id.*). Lois had "an assortment of concerns about the legal nature of the requests from Plug as to the processing and separation of the product that he had received from Plug, which [Walker] easily concluded substantially devalued the end product [Walker] was originally promised, on top of already giving 35.8 % of the product to the broker and Genesis [Walker] was supposed to receive 60% of." (*Id.*).

Thereafter, Walker demanded Brad Maynard pay Walker in full. (*Id.*). In response, Maynard told Walker that Maynard was retrieving the remainder of the crop on February 27, 2020 and internationally exporting the product. (*Id.*). Maynard informed Walker to direct further communications to Maynard's lawyer. (*Id.*). As a result, Walker is "fearful, absent intervention from this court, that [he] will never see a dime of what[he] was originally promised

and have been slaving night and day to provide to my family before my almost certain imminent death." (*Id.*)  To that end, Walker filed this suit on February 26, 2020 together with a motion for a temporary restraining order.  The motion asks the Court to stop Genesis from releasing "any and all hemp product pertaining to W3Hemp Farms . . . grown under license number #19-1010-G."  (Doc. 3).

## DISCUSSION

Three considerations prevent the Court from adjudicating this motion for a temporary restraining order: (1) any cause of action belongs to W3, which cannot appear *pro se* in this Court; (2) there is insufficient information for the Court to assure itself of its subject matter jurisdiction; and (3) even if an attorney had entered an appearance and subject matter jurisdiction did exist, the criteria for issuing an *ex-parte* order are not present.

### A. **Real Party in Interest**

From the allegations of the complaint, the hemp crop belongs to W3, which is described as a Kentucky company.  (Doc. 1).  W3, not Walker, holds the contract with Plug Supply, who then gave the hemp crop to Genesis.  In related lawsuit, of which this Court takes judicial notice, W3 is alleged to be a corporation.  *See Genesis Extractions, LLC. v. The Plug Supply*, No. 2:20-cv-00165-GBW-KRS (D.N.M., filed Feb. 26, 2020), at Doc. 1, Compl.).  A member of a company or a shareholder in a corporation generally may not enforce the rights of the corporation through a lawsuit in the individual's name. *See Fitzgerald v. Cent. Bank & Tr. Co.*, 257 F.2d 118, 120 (10th Cir. 1958) ("It is the well-established general rule that ordinarily a corporation is regarded as a legal entity separate and distinct from its members.").  Thus, any cause of action in this case belongs to W3.  W3, however, is not a party in this action.

Moreover, while the failure to name a real party in interest is not necessarily fatal to jurisdiction, a corporation or company must be represented by an attorney to appear in federal court. *See Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) (citing *Harrison v. Wahatoyas*, *LLC*, 253 F.3d 552, 556 (10th Cir. 2001) ("As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se.")); *see also* D.N.M.LR-Civ. 83.7 ("A corporation, partnership or business entity other than a natural person must be represented by an attorney authorized to practice before this Court"). The Court should not allow Walker to circumvent the attorney requirement by purporting to sue in his individual capacity on claims that truly belong to W3. Walker says he hired an attorney but a lawyer did not file the complaint or the motion for a temporary restraining order, and no attorney has entered on behalf of Walker. (Doc. 4). In sum, Walker may not himself prosecute the motion for injunctive relief.

### B. **Subject-Matter Jurisdiction**

Federal courts have subject matter jurisdiction over cases where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a) (2018). A plaintiff must provide the basis of subject-matter jurisdiction in the complaint, *see* Fed. R. Civ. P. 8, and the Court must be independently satisfied that subject-matter jurisdiction exists to proceed in a case. *See State Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1270-71 (10th Cir. 1998). The Court may *sua sponte* raise subject-matter jurisdiction at any time, and the parties may not waive the Court's jurisdiction. *See Louisville & N. R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

For diversity purposes, the citizenship of business entities depends on their nomenclature. A corporation is a citizen of the states in which it is incorporated and in which the corporation

maintains its principal place of business, if different. *See* 28 U.S.C. § 1332(c). However, partnerships, limited partnerships, and limited liability companies are citizens of each state in which any partner or member is a citizen. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (stating the citizenship of business entities is determined by the citizenship of its members). In other words, if the plaintiff shares citizenship with any of the possible combinations of citizenships for defendant business entities, diversity is destroyed and this Court may not hear the controversy.

In this case, the Court is unable to ascertain subject-matter jurisdiction and by extension whether it has the authority to adjudicate the motion for a temporary restraining order. Walker alleges he is from Tennessee, W3 is a "Kentucky" company, and Genesis is a New Mexico limited liability company. (Doc. 1). The related lawsuit alleges W3 is a Kentucky corporation. *See Genesis Extractions, LLC. v. The Plug Supply*, No. 2:20-cv-00165-GBW-KRS (D.N.M., filed Feb. 26, 2020), at Doc. 1, Compl.). The identity and citizenship of each of Genesis' members is not alleged; nor is it clear where, if W3 is corporation, it was incorporated and principally does business; or, if a company, the identity of its members and their respective states of residence. Because the Court cannot assure itself of subject-matter jurisdiction at this juncture, it should not issue an *ex-parte* order restraining Genesis.

### C. <u>Temporary Restraining Order</u>

A TRO is an extreme remedy issued without notice to the opposing party designed to preserve the status quo while the movant prepares a motion for preliminary injunction and before the Court can hear the merits. *See Nova Health Systems v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006). Under Federal Rule of Civil Procedure 65(b), the plaintiff must provide "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." The Court has examined Walker's filings. There is no such verification or affidavit here to establish the immediacy of the injury that would preclude the Court from hearing Genesis' response in this case.

Moreover, to obtain a TRO, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of a restraining order; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a [restraining order;] the moving party must first demonstrate that such injury is likely before the other requirements' will be considered." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted). Here, Walker cannot sustain that burden for two reasons.

First, Walker's chief complaint is monetary: "absent intervention from this court," Walker complains, he "will never see a dime of what[he] was originally promised[.]" But "the movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Id.* Second, in the related lawsuit, Genesis has asked the Court to interplead the processed hemp. *See Genesis Extractions, LLC. v. The Plug Supply*, No. 2:20-cv-00165-GBW-KRS (D.N.M., filed Feb. 26, 2020), at Doc. 1, Compl.). Thus, even if money is an inadequate remedy, Genesis recognizes the hemp is subject to dispute and is effectively preserving the status quo by keeping the processed hemp at its facilities in Radium Springs and asking the Court to take custody of it, however impractical that may be. Thus, there

is no immediate threat to Walker of losing the processed hemp. Walker may litigate his entitlement to the hemp or that of his company's (with a lawyer) in the related lawsuit.

## CONCLUSION

For the reasons set forth above, Walker has not established entitlement to the extreme *ex-parte* relief he seeks. The Court, therefore, **RECOMMENDS** the motion for temporary restraining order (Doc. 3) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff be permitted to file a motion for a preliminary injunction at his election with notice to Genesis provided Plaintiff (a) retains counsel; (2) amends his complaint to name his company as the real party in interest or allege why he may prosecute this matter in his individual capacity; (3) amends his complaint to identify the required information for the Court to determine whether diversity of citizenship is present; and (4) includes in the motion for injunctive relief facts establishing the irreparable injury as well as the other elements for relief.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**